Holland PAGE, Appellant,

v.

Eileen SCARAMOZI et al., Appellees.

No. 12951.

Court of Civil Appeals of Texas.

San Antonio.

March 14, 1956.

Rehearing Denied April 11, 1956.

Evans & Williams, San Antonio, William O. Washington, James R. Meyers, Coleman Gay, Austin, for appellant.

Lieck & Lieck, San Antonio, for appellees.

POPE, Justice.

Eileen Scaramozi, a widow, individually and as next friend for her five minor children, sued Holland Page and obtained judgment on a verdict. Page, under a contract with the State of Texas, had undertaken to remove and replace a culvert near the intersection of Elgin Street and Rigsby Avenue in San Antonio. He began excavations and piled the material in a portion of the intersection. Dominic Scaramozi, the plaintiff's husband, ran into the mound and died four hours later. Page contends that the court should have instructed a verdict in his favor because he was under no legal duty to protect the deceased from a danger which was open and obvious and of which he had knowledge, that the trial court erred in excluding certain evidence, that the damages are excessive, and the jury committed misconduct.

The accident occurred about ten o'clock one Sunday morning, on a clear day. Deceased proceeded in his pick-up truck in a northerly direction along Elgin Street toward Rigsby Avenue. He could easily see the mound, for it was about ten feet high, covered about one-half the width of Elgin Street on which deceased was driving, and extended across the paved portion of Rigsby which intersected Elgin. The jury found that defendant's failure to place a barricade next to the pile of dirt and debris to guide traffic proceeding out of Elgin Street around the debris was negligence; that there was a large object or objects of debris on the street around the edge of the pile of dirt; that such debris was in such position that motor vehicles traveling on Elgin Street into Rigsby would come in contact with it; that defendant knew, or should have known, in the exercise of ordinary care, of the presence of such objects in sufficient time to have remedied the condition; that defendant's employees permitted such objects to remain on the street; and that permitting such condition was negligence. The jury further found that defendant failed to place a warning sign for traffic on Elgin Street to circle the mound of debris at such distance as a person of ordinary prudence would have done, and that defendant failed to carefully guard such mound. Each of the negligent acts was found to be a proximate cause. Deceased was acquitted of all acts of contributory negligence. The court submitted defensive issues inquiring whether the pile of dirt and the conditions surrounding it were open and obvious to deceased, and whether the conditions complained of around the mound were open and obvious to deceased to the extent that he had full knowledge and appreciation of the danger. The jury answered each of those issues in the negative.

Despite the findings against defendant, Page urges that, as a matter of law, he should have judgment in a case where deceased ran into the mound which was easily visible. If deceased ran head-on into the mound, his point would be good, but plaintiffs did not pitch their case on that basis. Plaintiffs do not complain about the mound, but about the unknown and unguarded conditions on Elgin Street surrounding the mound. Every issue was factually disputed. Witnesses for defendant, Page, testified that deceased ran his car upon the mound, which extended some 50 feet, and fell off the side. Plaintiffs' witnesses testified; supported by pictures, eye witnesses and tire marks on rocks and in the dirt; that the car proceeded slowly around the edge of the mound; that it suddenly bounced so hard that deceased hit the top of the car; that the car was diverted into the side of and upon the mound and then turned over. Plaintiffs further showed that, in breaking up the culvert, defendant's employees piled stones on the mound and some of them rolled to the edge of the street. Witnesses testified that there were large stones around the mound. One witness testified that a large stone was underneath the truck in the street when the truck was raised. Another witness said about the car: "It made a big bounce up, then

went up the pile of dirt and turned over to the left side." Another witness testified: "It was very sudden. It jumped on the dirt." A witness identified a rock which had tire marks on it. The rock was introduced in evidence. A county highway patrolman testified that he saw defendant's employee place smudge pots on the large rocks, that the condition existed several days before the accident, and that he advised against it for the very reason exemplified by this accident. The patrolman testified that the rocks were present the evening after the accident.

Defendant's witnesses testified that there were no rocks in the street at the foot of the mound. A witness who operated a business across the street stated she had never noticed them. Photographic evidence conflicts with that testimony. Plaintiffs' evidence showed that, though the rocks were present, they were not open and obvious, as they were camouflaged by the texture of the stones, street and debris, and could not be seen unless it was known that they were present. Even if seen, the stones could not be seen in time to avoid them. There was evidence in support of the idea that large stones were permitted to roll into the street, that deceased did not know this in sufficient time, but that defendant did know it and had a previous warning; that the car hit a stone and was deflected into the mound.

■ "One who in the exercise of a lawful right, and without negligence on his part * * * obstructs the road with a foreign substance, is bound to give warning of the danger created thereby." Buchanan v. Rose, 138 Tex. 390, 159 S.W.2d 109, 110.

That duty extends to the traveled portion of the street, and sometimes even beyond it. City of Waco v. Darnell, Tex.Com. App., 35 S.W.2d 134; Gabbert v. City of Brownwood, Tex.Civ.App., 176 S.W.2d 344; City of Waco v. Criswell, Tex.Civ. App., 168 S.W.2d 272; City of Corpus Christi v. Caddell, Tex.Civ.App., 98 S.W. 2d 372.

■■ The conflicting evidence presented a jury question, because "A plaintiff's right to recover cannot be defeated on the theory that he assumed the risk of injury under the doctrine of *volenti non fit injuria* unless it appears that with full knowledge of the nature and extent of the danger involved he put himself in the way of the particular risk involved as the result of an intelligent choice." Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W. 2d 60, 64; Blanks v. Southland Hotel, 149 Tex. 139, 229 S.W.2d 357; Peck v. Peck, 99 Tex. 10, 87 S.W. 248; Dudley & Orr v. Jacobs, Tex.Civ.App., 257 S.W. 315; Juliano v. State, 190 Misc. 180, 71 N.Y.S.2d 474; Connelly v. State, Ct.Cl., 44 N.Y.S.2d 331; Volinsky v. Public Service Coordinated Transport, 5 N.J.Super. 320, 68 A.2d 894; Clark v. Meyers, 173 Kan. 96, 244 P. 2d 217.

In the course of the trial, defendant offered in evidence certain entries made in a diary kept and signed by Robert M. Brent, who at the time of trial was deceased. In the course of the construction work, he was the representative of the State Highway Department. The diary was an official and permanent record of the Department. The court sustained plaintiffs' objections to certain entries concerning matters which were cumulative or admitted. The entry made on May 23, 1954, the date of the accident, was also, on objection, excluded. The exclusion is assigned as error. The entry was:

"Had fatal accident on job at approx. 10:00 A.M. at intersection of Rigsby and Elgin Streets. Pick up truck going North on Elgin did not stop on entering highway. Hit pile of excavated material from culvert and turned over. Road was dry and visibility unlimited at time of accident. Barricades and warning signs were posted and protection to travelling public seemed adequate."

■ Plaintiff admitted the diary was an official record, but objected because it contained ex parte statements, was hearsay and embraced conclusions and opinions.

The objections were properly sustained. Roberts v. Dallas Ry. & Terminal Co., Tex. Civ.App., 276 S.W.2d 575; Smith v. Riviere, Tex.Civ.App., 248 S.W.2d 526, 530; Union Central Life Ins. Co. v. Boulware, Tex.Civ.App., 238 S.W.2d 722.

Appellant also asserts that the damages are excessive. The jury awarded a total of $76,633. Of this sum, the widow was awarded $35,000, two children received $5,000 each, another received $7,000, another $9,000, and another $15,000. The awards to the children were based on varying ages. Evidence showed that deceased would have earned a maximum of $5,000 per year, and had an expectancy of 27 years, or a total of $135,000. Appellant urges that the maximum total earnings, when discounted at six per cent, to arrive at the present value "if paid now in cash," as charged, would amount to $51,500 only.

■ The charge of the court, properly and without objection, included instructions that the widow's loss could include not only the contributions, but also services, advice and counsel. The children's loss included not only contributions, but also nurture, care, education and advice. Those matters have value in addition to the expected financial contribution. Moreover, whether the expected contributions should be discounted at six per cent or a different rate was not proved nor charged. This Court stated, in Rowan & Hope v. Valadez, Tex. Civ.App., 258 S.W.2d 395, 400:

"The sum of $50 per month for eighteen years, the life expectancy of the deceased, will not total the sum awarded by the jury, but the members of the jury in fixing the pecuniary loss were not restricted to a mathematical formula. They could properly consider and credit the evidence that Jose Maria B. Valadez had maintained a family for a period of twenty-five years, provided for the sustenance of the members thereof, counseled, and advised with his wife and children and had provided educational facilities for the latter, as their needs required. They were authorized to estimate the value of these contributions and services. The amount of damages to be awarded in a case of this kind is primarily a matter for the jury to determine."

■ The court gave judgment for only $73,633, after ordering a remittitur of $3,000, on the award of $15,000 to one of the minors. The remittitur was made because the pleadings sought only $12,000. Under the law, the damages are not excessive for the six causes of action here concerned.

■ Appellant, as a part of his argument about excessive damages, refers to certain matters developed upon the misconduct hearing. Jury misconduct itself is not briefed as grounds for reversal, except insofar as it relates to the excessive damages. However, the trial court made no finding of misconduct, and the implications follow that misconduct was not proved. Rosamond v. Keyes, Tex.Civ.App., 255 S. W.2d 399. If there be misconduct, it was promptly rebuked. Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558.

We have examined the other points, but find no reversible error. The judgment is affirmed.