Hillsborough
No. 6281

RITA V. MERRILL v. CITY OF MANCHESTER

ALBERT F. MERRILL v. SAME

ALICE E. ELHADY v. SAME

November 29, 1974

*Nixon, Christy & Tessier* and *John E. Peltonen (Mr. Peltonen* orally) for Rita V. and Albert F. Merrill.

*Kfoury & Williams (Mr. Paul R. Kfoury* orally) for Alice E. Elhady.

*J. Francis Roche* and *Clifford J. Ross,* city solicitors *(Mr. Ross* orally), for the city of Manchester.

LAMPRON, J. Actions by Albert and Rita Merrill, husband and wife, for damages resulting from a fall by Rita on July 2, 1970, caused by a defect in a sidewalk alleged to be attributable, at least in part, to the negligence of employees of the city of Manchester. Consolidated therewith was an action by Alice E. Elhady for damages sustained on August 20, 1970, when she was thrown about in the interior of an automobile in which she was a passenger when the car came

in contact with a large hole in a public street, which defect was also allegedly attributable, at least in part, to the negligence of employees of the city. The city filed motions to dismiss these actions as a matter of law on the ground that these occurrences resulted from a governmental function for which there is no liability. The motions were granted by *Loughlin,* J., who reserved and transferred plaintiffs' exceptions. We are asked by the plaintiffs to reconsider and abolish the existing immunity of a city or town from liability for such accidents. *See Gossler v. Manchester,* 107 N.H. 310, 221 A.2d 242 (1966).

It is generally understood that the doctrine by which municipal corporations are held immune from liability in tort originated with the case of *Russell v. Men of Devon,* 2 Term Rep. 667, 100 Eng. Rep. 359 (1789); *see* Restatement (Second) of Torts § 895 C, Comment *c* (Tent. Draft No. 19, 1973). At that time the idea of a municipal corporation was still in a nebulous state and actions were brought against the entire population. There being no corporate funds out of which satisfaction of a judgment could be obtained, individual citizens would be required to pay it themselves. Hence the court held in substance that it was better that the injured person should be without a remedy than that the public should suffer the inconvenience of the multiplicity of actions which would result if liability were recognized.

Later decisions evolved the following additional reasons for municipal immunity: A municipality derives no profit from the exercise of governmental functions which are solely for the public benefit; cities and towns could not carry on their functions if moneys raised by taxation for public use were diverted to making good for torts of employees; modification or abolition of municipal immunity is a matter for the legislature and not for the courts. W. Prosser, Law of Torts § 131, at 978 (4th ed. 1971).

That an individual injured by the negligence of the employees of a municipal corporation should bear his loss himself as advocated in the *Russell* case, *supra,* instead of having it borne by the public treasury to which he and all other citizens contribute, offends the basic principles of equality of burdens and of elementary justice. *Becker v. Beaudoin,* 106 R.I. 562, 568, 261 A.2d 896, 900 (1970); *Molitor v. Kane-*

*land Community Unit Dist. No. 302,* 18 Ill. 2d 11, 21, 163 N.E.2d 89, 93 (1959). It is foreign to the spirit of our constitutional guarantee that every subject is entitled to a legal remedy for injuries he may receive in his person or property. N.H. CONST. pt. I, art. 14. "To secure to all as perfect equality of privilege and of burden as human wisdom permits, was the chief end sought by the framers of the instrument." *Opinion of the Justices,* 86 N.H. 597, 599, 166 A. 640, 645 (1933). It is also contrary to the basic concept of the law of torts that liability follows negligence and that individual corporations are responsible for the negligence of their agents, servants and employees in the course of their employment. *Spencer v. General Hosp.,* 425 F.2d 479, 487 (D.C. Cir. 1969) (Wright, J., concurring).

To alleviate the harshness produced by municipal immunity the courts have resorted to assigning a dual character to these corporations. On the one hand, they are considered subdivisions of the State endowed with governmental powers and charged with governmental functions and responsibilities. On the other hand, they are considered as corporate bodies capable of much the same acts as private corporations with similar special interests and relations. Insofar as the municipalities exercise a governmental function they are held immune from liability for their torts. When acting in their corporate or proprietary capacity they are liable for their torts under the same principles applied to private corporations. *Edgerly v. Concord,* 62 N.H. 8 (1882); *Reynolds v. Nashua,* 93 N.H. 28, 35 A.2d 194 (1943); W. Prosser, Law of Torts § 131, at 977 (4th ed. 1971).

"The present legal doctrines which purport to define the area within which the municipality shall make recompense to the individual harmed are inadequate . . . . [T]hey fail to achieve even an approximate degree of consistency in application because the distinction between governmental and proprietary function is not founded upon any inherent quality of the various activities, but rather is generally used as a means of expressing a conclusion that immunity or liability should result in a particular situation." *Williams v. Detroit,* 364 Mich. 231, 254, 111 N.W.2d 1, 17 (1961), *quoting* Smith, *Municipal Tort Liability,* 48 Mich. L. Rev. 41, 56 (1950) "The

doctrine has been amended and eroded until the most that remains is an abstract and confusing principle which finds literally no continuity between jurisdictions." *Campbell v. State,* 284 N.E.2d 733, 734 (Ind. 1972). "It has been said that the rules which courts have sought to establish in solving this problem are as logical as those governing French irregular verbs." W. Prosser, Law of Torts § 131, at 979 (4th ed. 1971).

The fact that a municipality is not a profit-making venture and that it would be improper to divert municipal funds to the payment of tort claims are not convincing arguments in support of municipal immunity. These same considerations have been used as a basis for the immunity of charitable corporations. *President And Dir. of Georgetown College v. Hughes,* 130 F.2d 810, 815 (1942); W. Prosser, Law of Torts § 133, at 993-96 (4th ed. 1971). New Hampshire has never applied charitable immunity. *Hewett v. Association,* 73 N.H. 556, 563, 64 A. 190, 193 (1900); *Welch v. Hospital,* 90 N.H. 337, 9 A.2d 761 (1940). In recent years·there has been "a deluge of decisions that there is no immunity . . . and that a charity is liable for its torts to the same extent as any other defendant." W. Prosser, *supra* at 996. The many charitable corporations, hospitals and others, which have operated successfully for many years to the benefit of the citizens of this State are strong evidence that the abolition of immunity would not violate municipal purposes or produce the catastrophic results predicted by its proponents.

It is appropriate to point out at this juncture that municipal corporations are now and have been for many years liable in torts for their proprietary activities. *Allen v. Hampton,* 107 N.H. 377, 222 A.2d 833 (1966). When so acting in their corporate capacity, their liability for torts is tested by the same principles applied to private corporations. *Gates v. Milan,* 76 N.H. 135, 136, 80 A. 39, 40 (1911); *Wadleigh v. Manchester,* 100 N.H. 277, 278, 123 A.2d 831, 832 (1956). Furthermore, municipalities are presently and have been for a long time held liable by courts for negligently invading an adjoining owner's property or for creating a nuisance even while they are engaging in a governmental function. *Webb v. Rye,* 108 N.H. 147, 150, 230 A.2d 223, 226 (1967); *see* 72 Mich. L. Rev., 187, 238-49 (1973). The legislature

has also imposed municipal responsibility for torts while performing purely governmental functions. RSA 247:17 makes municipalities liable for personal or property damage resulting from travel on a bridge, culvert, sluiceway or dangerous embankments of which notice of insufficiency has been given. RSA 412:3 provides for a waiver of immunity up to the limit of insurance purchased by a city, town, and other units to cover damages resulting from performance of governmental functions. *Villars v. Portsmouth*, 100 N.H. 453, 129 A.2d 914 (1957).

In *Gossler v. Manchester*, 107 N.H. 310, 311, 221 A.2d 242, 243 (1966), this court made the following observation: "The rule against municipal liability for torts has been the subject of thousands of pages of learned dissertations, and the flood of legal articles and comments castigating the reasoning embodied in the justification of its continuance continues unabated." However, a majority of the court then held: "Whether contemporary expansions of the field of governmental activities demand a corresponding expansion of the scope of municipal liability for the manner of performing public duties, is a matter for legislative rather than judicial determination." Thereafter Senate bill 171 (1967) providing for a limited waiver of sovereign immunity was referred to the judicial council and received an inexpedient to legislate recommendation. 12 N.H. Judicial Council Rep. 12-16 (1969). House bill 177 (1969) abolishing sovereign immunity for claims up to $2,500 was reported inexpedient to legislate. However, "there was general agreement among the committee favoring in principle the abolition of the doctrine of sovereign immunity." N.H.H.R. Jour. 436-37 (1969). House bill 191 (1973) which would have made mandatory the purchase of insurance under RSA ch. 412, which is now optional, was reported inexpedient to legislate. N.H.H.R. Jour. 1706 (1973). Senate bill 21 dealing with abolition of sovereign immunity was referred to the house and senate judiciary committees for study. N.H.H.R. Jour. 2123 (1973).

It is undisputed that the doctrine of municipal immunity for torts was created by the judiciary. *Gossler v. Manchester supra; Ayala v. Philadelphia Bd. of Pub. Educ.*, 305 A.2d 877, 878 (Pa. 1973); W. Prosser, Law of Torts § 131, at 978 (4th

ed. 1971). When dealing with a similar rule preventing an unemancipated child from suing his parents for their torts, this court held that: "[F]inding no supportable rationale upon which this judicially created exception to the ordinary rules of liability can be predicated, justice demands and reason dictates that a change be made from the previous holding in such a situation." *Dean v. Smith*, 106 N.H. 314, 318, 211 A.2d 410, 413 (1965); *Hurley v. Hudson*, 112 N.H. 365, 367-68, 296 A.2d 905, 906 (1972); *see Lombardo v. D.F. Frangioso & Co.*, 359 Mass. 529, 269 N.E.2d 836 (1971); *Perkins v. State*, 252 Ind. 549, 555, 251 N.E.2d 30, 34 (1969). The fact that bills pertaining to municipal and related immunities have been introduced in the legislature and failed to be adopted does not militate against action by this court. *Briere v. Briere*, 107 N.H. 432, 434, 224 A.2d 588, 590 (1966); *Holytz v. Milwaukee*, 17 Wis. 2d 26, 37, 115 N.W.2d 618, 623 (1962). The legislature expresses its will by enacting laws, not by failing to do so. Furthermore, its inaction could be motivated by its assumption that if a judicially developed rule is unjust the courts will overrule it. *Williams v. Detroit*, 364 Mich. 231, 238, 111 N.W.2d 1, 21 (1961); Peck, *The Role of the Courts and Legislatures in the Reform of Tort Law*, 48 Minn. L. Rev. 265, 291 (1963).

No one defends total immunity for municipalities. Hence the many exceptions, both legislative and judicial, which result in serious inequalities. Some who are injured can recover, others cannot. *Allen v. Hampton*, 107 N.H. 377, 222 A.2d 833 (1966); *Muskopf v. Corning Hosp. Dist.*, 55 Cal. 2d 211, 216, 359 P.2d 457, 460 (1961). The prevailing rule of torts today is that where there is negligence by an individual or a corporation liability follows. *Becker v. Beaudoin*, 106 R.I. 562, 568, 261 A.2d 896, 900 (1970). Immunity is the rare exception. *Muskopf, supra* at 219, 359 P.2d at 462; *Molitor v. Kaneland Community Unit Dist. No. 302*, 18 Ill. 2d 11, 20, 163 N.E.2d 89, 93 (1959). Municipal functions have become so varied and extensive that public safety demands that municipalities be held to the safety standards of other citizens. "[T]he empirical data does not support the fear that governmental functions would be curtailed as a result of liability for tortious conduct." *Ayala v. Philadelphia Bd. of Pub. Educ.*,

305 A.2d 877, 883 (Pa. 1973); 26 U. Fla. L. Rev. 89, 90 (1973); *see Board of C. of P. v. Splendour S. E. Co.*, 273 So. 2d 19, 25-26 (La. 1973). Furthermore, abolition of immunity with resulting responsibility would most likely tend to reduce injuries from municipal operations. *Johnson v. State*, 69 Cal. 2d 782, 796, 447 P.2d 352, 360 (1968). Liability insurance which protects other corporations, be they private business or charitable institutions, can provide the same safeguards for municipal corporations. *Brinkman v. Indianapolis*, 141 Ind. App: 662, 667, 231 N.E.2d 169, 172 (1967); *Louisville v. Chapman*, 413 S.W.2d 74 (Ky. 1967). We are aware that the purchase of insurance will be reflected in the municipality's operating costs. However, it will assure each taxpayer that if he is injured as a result of a tort committed by public employees, the economic impact will be shared with all other citizens rather than falling upon his shoulders alone. *Williams v. Detroit*, 364 Mich. 231, 259, 111 N.W.2d 1, 25 (1961); *see* 2 F. Harper and F. James, The Law of Torts § 29.6, at 1622 (1956).

An increasing number of States have recognized the injustice of the doctrine of governmental tort immunity as well as the lack of administrative or fiscal reasons for its retention. 26 U. Fla. L. Rev. 89 (1973). A major trend has developed in the last seventeen years toward its abolition. During that period governmental immunity has been abolished by judicial decisions in at least eighteen States and by legislative enactment in eight others. Finding no supportable rationale upon which this judicially created exception to the ordinary rules of liability can be predicated, it is just and reasonable that a change be made from our previous holdings as to municipal immunity. We hold that the immunity from tort liability heretofore judicially conferred upon cities and towns is hereby abrogated except for the following exception. They are immune from liability for acts and omissions constituting (a) the exercise of a legislative or judicial function, and (b) the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. *Hurley v. Hudson*, 112 N.H. 365, 368-69, 296 A.2d 905, 907 (1972); *Spencer v. General Hosp.*, 425 F.2d 479, 488 (D.C.

Cir. 1969); *Johnson v. State*, 69 Cal. 2d 782, 447 P.2d 352 (1968); *Smith v. Cooper*, 475 P.2d 78 (Ore. 1970); K. Davis, Administrative Law Text § 25.03, at 473-79 (1972); Restatement (Second) of Torts § 895 C, Comment *g* at 35 (Tent. Draft No. 19, 1973); *see Hansen v. St. Paul*, 214 N.W.2d 346, 349 (Minn. 1974).

This removal of immunity does not impose absolute or strict liability on cities and towns but merely places them subject to the same rules as private corporations if a duty has been violated and a tort committed. In other words it places responsibility on cities and towns under the doctrine of respondeat superior for injuries negligently caused by their agents, servants and employees in the course of their employment. *Hargrove v. Cocoa Beach*, 96 So. 2d 130, 133 (Fla. 1957); *Johnson v. Municipal Univ.*, 184 Neb. 512, 514, 169 N.W.2d 286, 288 (1969). Furthermore, the legislature has authority to specify the terms and conditions of suit against cities and towns, limit the amount of recovery, or take any other action which in its wisdom it may deem proper. *Williams v. Detroit*, 364 Mich. 231, 260-61, 111 N.W.2d 1, 25 (1961); 48 Mich. L. Rev. 265, 304 (1963).

To permit the legislature to take action in regard to the social and economic factors resulting from this decision; and to enable the various cities and towns to make financial and other arrangements to meet the new liability implicit in this holding, the effective date of the abolition of the rule of immunity of cities and towns for torts shall be July 1, 1975. The new rule will not apply to torts occurring before July 1, 1975. *Hampton Nat'l Bank v. Desjardins*, 114 N.H. 68, 314 A.2d 654 (1974); *Hurley v. Hudson*, 112 N.H. 365, 368, 296 A.2d 905, 907 (1972); *Holytz v. Milwaukee*, 17 Wis. 2d 26, 42, 115 N.W.2d 618, 626 (1962); *Evans v. Board of County Comm'rs*, 174 Colo. 97, 106, 482 P.2d 968, 972 (1971).

However, the new rule will apply to the present cases. We reach this result for two compelling reasons: (1) If we were to merely announce the new rule without applying it here, such announcement could be considered mere dictum; and (2) to refuse to apply the new rule to these cases would deprive the plaintiffs of any benefit from their efforts and expense in challenging the old rule which we have found

to be obsolete. *Becker v. Beaudoin,* 106 R.I. 562, 573, 261 A.2d 896, 902 (1970); *Molitor v. Kaneland Community Unit Dist. No. 302,* 18 Ill. 2d 11, 28, 163 N.E.2d 89, 97 (1959). This decision is limited to the abrogation of the immunity of cities and towns, and we have not considered nor does our decision affect the immunity of the State or of any other governmental unit.

*Plaintiffs' exceptions sustained; remanded.*

DUNCAN J., and GRIMES, J., concurred in a separate opinion; the others concurred.

DUNCAN, J., concurring: I concur in the foregoing opinion with some reluctance, not so much because of what it decides, as because of what it portends. It is now eight years since members of the court in *Gossler v. Manchester,* 107 N.H. 310, 221 A.2d 242 (1966), pointed out some of the inequities of governmental immunity, and professed a disposition to find remedies. Sporadically the subject has resurfaced, but without departure from stare decisis. *See Allen v. Hampton,* 107 N.H. 377, 222 A.2d 833 (1966); *Stott v. Manchester,* 109 N.H. 59, 242 A.2d 58 (1968); *Hurley v. Hudson,* 112 N.H. 365, 296 A.2d 905 (1972). No legislative solution has materialized, and responsible action by the court counsels against mere repetition of past criticism. Most recently an interim study committee constituted by the 1973 legislature has some features of the problem under consideration in the form of Senate bill 21. 2 N.H.H.R. Jour. 1797, 2123 (1973). While the legislative process may merit some deference, the court has a responsibility to decide the cases presented to it, and in so doing to determine future policy and the requirements of justice, albeit in piecemeal fashion, case by case, rather than by setting standards for the whole spectrum of governmental immunity.

Today's decision, by departing from the intransigence of the past, challenges those who are in a position to further justice through law, and its implications call for careful consideration of consequences.

"The problems involved in drawing standards for govern-

mental liability and governmental immunity are of immense difficulty. Government cannot merely be made liable as private persons are, for public entities are fundamentally different from private persons. Private persons do not make laws . . . . Only public entities are required to build and maintain . . . streets, sidewalks and highways. Unlike private persons, a public entity often cannot reduce its risk of potential liability by refusing to engage in a particular activity, for government must continue to govern and is required to furnish services that cannot be adequately provided by any other agency." 4 Cal. Law Revision Comm'n, Reports, Recommendations and Studies 810 (1963); *see* Cooperrider, *Governmental Tort Liability*, 72 Mich. L. Rev. 187, 288 (1973); Restatement (Second) of Torts ch. 45-A, §§ 895A-D (Tent. Draft No. 19, 1973).

GRIMES, J., joined in the foregoing separate opinion.

ON MOTION FOR REHEARING filed by the defendant city of Manchester and on motions to intervene and for rehearing filed by the plaintiffs in Norma B. Lavoie *& a.* v. Town of Allenstown *& a.* (not docketed), Barbara S. Couture v. City of Portsmouth (No. 6588), and Timothy McGinnin v. City of Manchester (No. 6804).

*Nixon, Christy & Tessier* and *John E. Peltonen* (*Mr. Peltonen* orally) for Rita V. and Albert F. Merrill.

*Kfoury & Williams* (*Mr. Paul R. Kfoury*) for Alice E. Elhady.

*Sulloway, Hollis, Godfrey & Soden* and *John C. Ransmeier* (*Mr. Ransmeier* orally) for Norma B. Lavoie *& a.*

*Shaines, Madrigan & McEachern* and *Sanford Roberts* (*Mr. Roberts* orally) for Barbara S. Couture.

*Green, Sullivan & Green* (*Mr. Leonard S. Green* orally) for Timothy McGinnin.

*Norman H. Stahl,* interim city solicitor, and *James E. Townsend* (*Mr. Stahl* orally) for the city of Manchester.

*Richard F. Therrien* and *Sheehan, Phinney, Bass & Green* and *Claudia C. Damon* (*Mr. Therrien* and *Ms. Damon* orally) for the town of Allenstown.

*Peter J. Loughlin*, city attorney, by brief and orally, for the city of Portsmouth.

LAMPRON, J., Defendant city of Manchester seeks a rehearing to have this court reconsider and reverse its decision abolishing the municipal immunity of cities and towns as of July 1, 1975. If not successful in that respect, the city asks that the new rule be applied prospectively only to torts occurring on or after the above date. Most, if not all, the reasons advanced in support of reversal were briefed and argued orally by the city and carefully considered by the court in arriving at its decision. No useful purpose would be served in reciting them a second time.

Suffice it to say that in its motion for rehearing the city has placed particular emphasis on the impact of the decision on municipal budgets and the difficult or probably impossible task of securing adequate insurance to protect cities and towns from the resulting liabilities. "Empirically, there is little support for the concern that the courts will be flooded with litigation if the [immunity] doctrine is abandoned". *Ayala v. Philadelphia Bd. of Pub. Educ.*, 305 A.2d 877, 882 (Pa. 1973). Nor has any factual basis been presented to support the city's contention that the solvency of municipalities in this State would be threatened or their functions curtailed as a result of their new liability for tortious conduct in their governmental operations. *See* 35 ATLA L.J. 39, 40 (1974). Furthermore the dire predictions advanced by the city fail to take into account the fact noted by the court in its opinion that the legislature "has authority to specify the terms and conditions of suit against cities and towns, limit the amount of recovery, or take any other action which in its wisdom it may deem proper." *Merrill v. Manchester*, 114 N.H. 722, 332 A.2d 378 (1974).

We do not share the city's difficulty in reconciling the *Merrill* decision with RSA 412:3. Its contention, in effect, is that this statute is intended to grant or confer by legislation immunity to cities and towns for tort liability above the limits

of any insurance they may have purchased even though minimal in amount. Such an interpretation is inconsistent with its legislative history and would give an unreasonable meaning to its expressed terms. *Cushman v. Grafton*, 97 N.H. 32, 79 A.2d 630 (1951); *Plymouth School Dist. v. State Bd. of Educ.*, 112 N.H. 74, 289 A.2d 73 (1972); N.H.H.R. Jour. 633, 640, 970 (1951). The city's other contention that the *Merrill* decision should be given prospective operation only was considered by this court when the case was decided. We remain of the opinion that it is just that the new rule be applied to the plaintiffs in the *Merrill* case. *Becker v. Beaudoin*, 106 R.I. 562, 261 A.2d 896 (1970).

Intervenors, plaintiffs Lavoie, Couture, and McGinnin, seek reconsideration of the *Merrill* decision insofar as it provides that the abolition of municipal immunity will not apply to torts which have occurred or will occur before July 1, 1975. They seek to share the exception made for the plaintiffs in the *Merrill* case permitting them to maintain the actions which they had instituted before that decision. Intervenors have eloquently advanced arguments in support of retroactive application of the pertinent factors enumerated in *Hampton Nat'l Bank v. Desjardins*, 114 N.H. 68, 75, 314 A.2d 654, 658 (1974), and for the reasons stated in the *Merrill* opinion we remain convinced that, except for the *Merrill* plaintiffs, the abolishment of municipal immunity should not be applied retrospectively. Hence the abrogation of the immunity of cities and towns for injuries negligently caused by their agents, servants and employees in the course of their employment does not apply to torts which have occurred or will occur before July 1, 1975, even if actions therefor have been instituted and were pending when the *Merrill* decision was rendered.

*All motions denied.*

All concurred.

January 31, 1975