REQUESTED BY: William F. Davis, County Attorney, Otoe County, Nebraska City, Nebraska.
1. Does the County Board have authority to approve the construction of watershed structures which might conceivably cause the flooding of county roads at times of high water?
2. Would there be any liability upon the County Commissioners individually for approving the construction of watershed structures which might conceivably cause the inundation of public roads in times of high water?
3. In the event of an accident to persons or property resulting from the flooding of public roads, would the liability for such flooding rest with the County Commissioners for knowingly permitting the construction of said structure, or would such liability rest with the Nemaha Natural Resources District which would be responsible for the maintenance and upkeep of the watershed structures?
No.
Yes.
The possibility exists that both would be liable.
In analyzing the questions as submitted, we find under Section 39-1402 R.R.S. 1943:
 "General supervision and control of the public roads of each county is vested in the county board. The board shall have the power and authority of establishment, improvement, maintenance and abandonment of public roads of the county and of enforcement of laws in relation thereto as provided by the provisions of this act."
Section 39-1501 R.R.S. 1943 states in part:
 "The county board, in commissioner type counties having a county highway superintendent and in township type counties having adopted a county road unit system as provided in sections 39-1513 to 39-1518, shall:
 . . . (4) Have authority to enter into agreements with the federal government or any department or agency of the federal government, the state or any political or governmental subdivision or public corporation of this state, or with a citizen or group of citizens of this state respecting the planning, designating, financing, establishing, constructing, improving, maintaining, using, altering, relocating or vacation of highways, roads, streets, connecting links or bridges, and in such instances may cooperate with the state or with such subdivisions or public corporation on such terms as may be mutually agreed upon."
The statutes do not give the county authority to approve projects outside of the highway itself where said projects are under the full control of another. The county board cannot approve a project that they know will place the traveling public in a position of danger or injury. If they do approve such a project they could be acting outside the scope of their authority and thus, they could be held individually liable.
It should be noted that there is no case cited in Nebraska with the same set of facts as set forth in the request for this opinion. It thus becomes necessary to look at other situations and facts regarding liability of public officials who are acting within the scope of their authority with discretionary duties, as well as those who are acting outside their authority and duties. The general rule is:
 "Persons using highways, streets, and sidewalks are entitled to have them maintained in a reasonable safe condition for travel. One traveling on a highway is entitled to assume that his way is reasonably safe, and although a person is required to use reasonable care for his own safety, he is neither required, nor expected to search for obstructions or dangers." 39 Am.Jur.2d, Highways, § 337, p. 721.
This rule is stated along with the rule that is set forth in 39 Am.Jur.2d § 353, which states that the general rule of liability may not be imposed on errors or defects in design or plans adopted by a public body acting in a quasijudicial or legislative capacity, involving a true exercise of discretion, and where the plan adopted was not obviously and palpably dangerous. In the State of Nebraska the standard of care applied to the State as an insurer of the safety of the traveler using the highways is not always the same as that of a person in a private corporation. Thus, where the design and construction of a highway, according to accepted practice at the time of construction, does not include certain features, the State may not be liable for the delay in constructing those features, if in the opinion of the officials for the State, in their plan and design, they determine through their discretion that such is not necessary for the safety of the traveling public.
What is required of the officials for the State is that they adequately design, construct and maintain the highways and give adequate warning of existing conditions and hazards to the reasonably careful driver. It, therefore is required that the State exercise reasonable care to make and keep the roads in a reasonably safe condition for the reasonably prudent traveler but the State has no duty to make the roads absolutely safe. It further holds true that a motorist using the public highway has a right to presume that the road is safe for usual and ordinary traffic, and he is not required to anticipate extraordinary danger, impediments, or obstructions to which his attention has not been directed. Inherent is the duty of ordinary care to eliminate and to erect suitable barriers which would adequately warn a traveler of hazardous conditions where the State is aware of those conditions and put on notice of those conditions. The duty of the State is to correct dangerous conditions or otherwise take appropriate action when it receives actual notice of hazards.
In this regard, when we come to the question of design defects, we get down to the rule of `discretionary design' where the public entity is usually not liable for defects or errors in design of highways absent some indication that due care was not exercised in the preparation or design and unless it is known that the planned design is known to be manifestly dangerous.
A leading Kansas case, Hampton v. State Highway Commission, 209 Ks. 565, 498 P.2d 237 (1972), is a case similar to our set of facts. There the State appealed an award of $450,000 for personal injury and loss of an automobile when Plaintiff lost control of his vehicle due to an accumulation of water caused by a clogged drain in the highway and ultimately collided with an oncoming truck. Plaintiff charged that the accumulation was the result of the faulty design of the drain in the highway. The Court held that liability could not be predicated upon the design defect alone because the design was adequate when the highway was built and must be judged by standards prevailing at that time. Liability could be predicated, however, on the fact established by the evidence that the planned design, after actual use, was known to be manifestly dangerous to the users of the highway. The Court said:
 "The State Highway Commission of Kansas would not be liable for damages to persons or property on the sole basis of errors or defects on the original design or plan of the highway in question unless the plan or design was known to said Commission to be manifestly dangerous to users of the highway. However, after construction of the highway, the State Highway Commission would be liable for the damages resulting from a defect in the original plan where such defect is embodied in the construction work and is permitted to remain after the Highway Commissioner had noticed said defect, rendering the highway unsafe for the usage intended, for a period of five days or more." (emphasis supplied)
It should be noted, however, that the design must be manifestly dangerous or prove hazardous in practice in order to constitute a defect and a mere changing of standards in the laudable efforts of the State in trying to improve the safety of the highways do not make them defective or raise the question of liability.
The trend today in most states is to pass a Tort Claims Act to permit the states or counties to be sued for their negligent conduct or acts of improper design. Nebraska Revised Statutes, Sections 23-1401 is the political subdivision tort claim act, which statute abrogates sovereignty to some extent.
Certain cases have aided in governmental immunity being eroded in this State. They are: Brown v. City of Omaha,183 Neb. 430, 160 N.W.2d 805; Johnson v. Municipal Universityof Omaha, 184 Neb. 512, 169 N.W.2d 286; and Koch v.Grimminger, 192 Neb. 706, 223 N.W.2d 833 (1974).
In the Grimminger case, the Court said a prosecutor should not be liable when doing his statutory duties and exercising his discretion in performing those duties:
 "That a public prosecutor acting in his general scope of his official authority in making a determination whether to file a criminal prosecution, is exercising a quasi-judicial and discretionary function and where he acts in good faith, he is immune from suit for an erroneous or negligent determination."
The Court further stated:
 "This rule would not protect a prosecutor who, knowing that a particular charge is groundless in law or fact, nonetheless intentionally files a charge and thus acts through a corrupt motive. In such a case he would not be acting within the scope of his authority."
In Johnson v. Municipal University of Omaha, 184 Neb. 512,169 N.W.2d 286, we find the governmental immunity on tort liability being eroded. In this case, a participant of a track meet held at the University of Omaha while polevaulting fell upon a wooden box which had been placed by the University beneath the polevault stands. The Court said that cities, counties, and all other governmental subdivisions and local public entities of this State, including municipal universities, are not immune from tort liability arising out of a physical condition affirmatively and voluntarily created by the public body on its premises, or the existence of the condition is not reasonably visible or apparent, and where the condition constitutes an unreasonablerisk of harm to persons authorized to use and reasonably using the premises for the purpose intended.
The Court further said that this new rule applies only if the city or governmental subdivision or local public entity was insured against such liability on the date the claim arose, and then only to the extent of the maximum applicable amount of the insurance coverage. Thus, where there is a patent defect, it would appear that liability does exist. The Johnson case cited the Brown v. City ofOmaha case, supra, which sets forth the rule that if the public body is insured, it waives its governmental immunity.
We, therefore, come to the conclusion that a County Board, in authorizing construction of watershed structures, must satisfy itself that such construction does not create a hazardous condition which is manifestly dangerous to the traveling public. The County Board must exercise its discretion that the design and plan is such that it is in the public interest, and is not placing an extremely dangerous situation in the road that would be unsafe to the traveling public. It should be noted, however, that if they, from the beginning, determine that this is a dangerous condition built into the design that would cause injury or possible death to members of the traveling public, then the Board is acting outside of the scope of their authority and the members can be held individually liable.
It should be noted that the facts of each case will determine liability and no definite answer can be given to the set of facts before this writer. The decisions in this State indicate that there is immunity in certain cases and further that there is liability in certain cases. Liability or immunity hinges on whether the official was acting within the scope of his authority in exercising his discretionary powers properly in regard to the plan and design in construction. There cannot be any definite answer to this specific question, other than a caution being made to the County Board to exercise its discretion for design and planning in the interest of public safety and transportation.